Our next case is number 24, 1763, Nearmap US, Inc. This is Pictometry International Corporation. OK, Ms. Degna. May it please the court, Lauren Degna for Nearmap. There was no dispute over the meaning of oblique image before the board. The entire dispute was about the meaning of primary. The board used primary as a vehicle to impose a requirement that the primary image must be displayed in front of all other displayed images. The board took this requirement from the terminology section despite the patentee's explicit statement not to limit the claims to the meanings provided in that section. Worse, the board used extrinsic evidence as the justification to disregard the patentee's explicit instruction. OK, do we have any case where we've said that an explicit definition in a specification can be ignored because of that kind of boilerplate? So, Your Honor, the Rexnord case is about as close as a case we found insofar as the Rexnord case had similar language describing how the description should not be considered limiting. And if we just take the public notice function of the patents and the fact that the ordinary way to do lexicography is not to include such a statement, I think to give meaning to the patentee's election to provide a broader definition of primary, even if there's not a case that's directly these facts, the principles of this court tell us that when the patentee tells the world this example is not limiting, we must pay fealty to that instruction. Well, I don't think it's an example. It's a definition. So respectfully, Your Honor, given that the terminology section is directly under the statement where the patentee told the world, it should be understood that the terminology employed in here is for the purposes of description, like an example, and should not be regarded as limiting. To read those harmoniously, we would have to understand that the terminology section is providing mere examples akin to a preferred embodiment. And so it would not meet the test of lexicography when there is an explicit statement saying, please do not hold me to this specific description of primary oblique image. Ms. Damon, let me ask you the definition that we have. And I realize there's a question about whether it's binding. It says, a displayed oblique image that can be considered in front of the other displayed images. And then it says, the primary oblique image can also be a master image. What importance do you attach to the word can in that definition? It seems to be a permissive word. Absolutely, Your Honor. We think the use of can in both sentences describes permissible examples. And in particular, the- What did the board say, in your view, with respect to the word can? Well, the board did not look at can in terms of permissible. It looked at only the first sentence and said, this can be considered sentence, was really transformed into a must be considered in front of other images. And I think if you look at the juxtaposition, it really says that oblique image can be considered X, it can also be considered Y. That's a traditional either or format and doesn't require only one or only the other. But when they were talking, I guess I'm looking at page 23 of the joint appendix, when they're discussing the master image, they there seem to get into a discussion of looking at it as being permissive. Well, with respect to the master image, I think Your Honor is correct. The board assumed the first sentence use of can had this requirement, this must. But the second use of can, the board said, well, that would be optional. And I think that is an inconsistency, really, given the entire description of primarily oblique image in column six. Did your side argue below a, what I'll call by way of shorthand and correct me if I'm out of line on it. Did your side argue below or in your briefs here, this permissive interpretation of the word can? Our position throughout before the board and on this appeal is that it's improper to graph the requirement based on the only sentence, the first sentence alone. Is the answer to that no? I cannot think off the top of my head where we specifically talked about can being permissible. I do know that in several places we spoke of the two sentences being alternatives. And so there. You're talking about with respect to oblique and master. Correct. So to answer your question, I don't have a site at my fingertips that would say, you know. How about, excuse me for jumping in, but time is fleeting. How about before us? And correct me if I'm wrong, please, but I didn't see in the briefing before us where you made the argument that we've been discussing here about can being permissive. There are a number of arguments made, but I didn't see that. Am I wrong? I think in context where we're comparing and contrasting the two sentences, we are making the argument about can being optional. Can I find a place where we said that in connection with the first sentence alone, not off the top of my head, your honor, but I think in context, we have been making the argument that this particular description is an either or sort of thing. And that argument fundamentally encompasses what your honor has sort of recast as a permissible use of can. Okay. Assume for this question that I agree with you that the so-called definition in the terminology section is not binding as like lexicography. What in the specification would support a different construction than the one the board came up with anyway? Because you have to concede it's at least an example of what a primary oblique image could be, even if not lexicography, not binding. The figures seem to be consistent examples with the definition the board came up with. What, if anything, can I find in the specification that supports some different construction? I guess, your honor. Really, the rest of the specification as a whole does not support importing that limitation. The specification never uses the term in front of, except in that non-limiting definition. But the images it shows appear to be in front of, correct? Your honor, the specification never says they are, and I think it's debatable. I accept that our expert did look at them as in figure three alone, that one would be in front of the other. I would direct your attention to the rollback description in column 11. And in column 11, talking about how a new primary oblique image, and if I can get you there, your honor, is there column 11 around line 38, talks about column 11 around line 38. 38, I'm sorry. It says performs a rollback transition where you have the old primary oblique image being rolled back, and underneath it, you see a new primary oblique image. So this rolling back is an example of an embodiment where a primary image is considered underneath another displayed image, the one that's being rolled back. And so that is some description in the specification that contemplates a broader invention. And even if there were only a single embodiment, which we dispute, but if there were only a single embodiment, as the board construed. Yeah, but in that example you just gave, both of these things are referred to as primary oblique images. It's not as though the second one of these is a primary oblique image and the first one isn't. Yes, they both are, and that shows the breadth. The one on top is the old primary oblique image, and the one being revealed as the top one is rolled off is also a primary oblique image. So there's showing the breadth that both can be on top of or behind and not be limited to this in front of requirement. If I think, best for you, the intrinsic evidence is somewhat unclear, then I would have to get to the extrinsic evidence, and you've already referred to your own expert, Dr. Forsythe. The board read him, I think him, as being completely supportive of the other side's construction. Isn't that the, first of all, don't I have to defer to that reading? And second of all, it seems pretty clearly that's what Dr. Forsythe is saying. Okay, well, I have a kind of a multi-part answer to that question, if you'll permit me. First, I don't think there's a deference owed. This is a situation where, if you look at the testimony of Dr. Forsythe, he is being asked only, what do you think the construction is? And the legal question of what the construction is does not get the TEBA substantial evidence deference, if that's what you're talking about, sir. In terms of looking at his testimony as a whole, I think what we see when we get into the testimony is first, he says that the entire description, both sentences, he says only that it appears to be ordinary and customary, or something very close to it. So that's ambiguous. He's not saying that the definition- You would want to say he applied that construction in his analysis, correct? Well, I think the fair way to read his testimony is he applied what he saw in this non-limiting definition as part of his analysis. I don't think he says that's the only thing he applied. And when you look at even other parts of his deposition, he says several times that the main view of Snavely is certainly a primary oblique image. That's at Appendix 1907, Appendix 1937. In his first declaration, he says the main view is a primary oblique image. In his second declaration, around Appendix 228 through 29, 30 and 31, he points out that he rejects Pictomachy's construction. He points out there was a second sentence. So he is not agreeing with Pictomachy's interpretation of his testimony. What's his construction, according to you? Say that again? What's his construction, according to you? He doesn't provide an overall construction. He says there's improper to limit the claims to the in front of requirement. He says that unequivocally in his second declaration. He doesn't tell us what it means? Well, correct, Your Honor, because primary is a commonly understood word with a widely accepted lay meaning. Our position below, and as the expert, was that a lay definition, any synonym or primary would do. This is not uncommon in claim constructions. When a claim is not construed because it's an easily understood word, we don't give dictionaries to the jury. So primary means primary. And he never gave a further explanation of what synonyms we would use for primary, because that's simply not required. I see him on my rebuttal term. Would you have more questions, Your Honor? OK, you can save your rebuttal time. Thank you. Ms. Vu. May it please the Court, Laura Vu on behalf of Pictometry. The board correctly construed the primary oblique image limitation to include the in front of requirement. And that construction is supported by both the intrinsic and the extrinsic evidence. I'd like to take the Court first to the intrinsic evidence that supports that construction, and that is the terminology section, which is the- Yeah, but what about the statement that this is non-binding? So the non-limiting statement, that statement does not mean that you completely ignore how the specification describes the primary oblique image. And I know near maps counsel raised the Rexnor case. That case is distinguishable, because in that case, there was no dispute that the plain and ordinary meaning was broader. And so the specification was consistent with a broader interpretation. Here, there is expert testimony from both sides that the plain and ordinary meaning is narrower. And the specification through the terminology section and all the other consistent disclosures in the specification show that the meaning is narrower. And in the other cases that are addressing non-limiting statements, such as wireless agents and interdigital and sandbox, the Court did not say that the non-limiting statements outweighed those. OK, but did either expert say that there's an art-specific meaning to primary? Our expert testified that the plain and ordinary meaning of this term, in view of the specification, because we interpret the plain and ordinary meaning in view of the specification, not in a vacuum. But I don't think that's helpful. I don't think we need experts to interpret the specification, unless they're bringing to bear some knowledge about industry usage. And that's not happening here. The primary oblique image limitation, it's an image that has a specific function within the context of the specification. And so both experts testified that in view of the specification, the plain and ordinary meaning is an image that includes a specific function. But why should I pay any attention to that? So I mean, we used to, years ago, we used to have testimony by experts as to what claims meant. And we've said that we don't care about that, in terms of their interpretation of the intrinsic evidence. Well, so here, the experts are both testifying that the plain and ordinary meaning of primary oblique image is consistent with the specification. Where do they get the plain and ordinary meaning from? It's supported by the disclosures in the specification. What do you understand the board said about the word can? Because I don't want to sound like I'm hung up on it. Maybe I am. But it seems to me to be a totally permissive term. And can means can, but not necessarily. So the board found that in the context of the second statement. But for the language can be considered, which is in the first sentence, the board did not say that that use of the word can is permissive. But wouldn't, oh, you're absolutely correct. That's what they said. But isn't that inconsistent? I mean, can has to mean the same thing in the first place as in the second place, doesn't it? Not in this case. And the reason why is because the language actually says can be considered. And so what that phrase means in the context of this invention is that the primary oblique image appears in front of other images. But can would suggest, well, it can appear, but doesn't maybe have to. Because can is totally permissive, isn't it? No, it's not here. But you agree in normal discourse, it's permissive. Yes, in normal discourse, it would be. But here, it can be considered. And the reason why is because the invention is trying to disclose the display of images on top of each other on a screen. And so physically, the images are not actually in front of or on top of the other, but it appears that way on the screen. And so that's what can be considered means in the first sentence of the definition of primary oblique image. It appears in front of other images. It appears to look as if it's in front of, because really, it's a two-dimensional screen. Nothing's in front of anything. But is there evidence in the record to support that reading? Yes, there is other disclosures that are consistent with that understanding. We discussed the rollback transition statement at column 11 of the specification. And so to look at that language more closely, it says you perform a rollback transition where the old primary image appears to be rolled to the side, and then the new area is filled with the new primary oblique image, and the new primary oblique image would appear in front of the others. And I've- Does it say that the new primary image will appear in front of, or you're reading that in? Well, through the definition, the primary image appears in front of other images. And then we have the rollback phrasing, which is consistent. And again, we're talking about two-dimensional space on a screen. And so a rollback visual, you're just pulling it to the side and making it appear as if it is behind other images. And when, so the specification talks about primary images that transition to secondary oblique images when they're no longer the primary oblique image. And so that's what's happening here. You have the old primary oblique image, which is transitioning to the secondary oblique image, which is why it is then being rolled back. And then the new primary oblique image is going to be on top of the others. We also have the statement directly before that statement in the specification at lines 36 to 37. It says you draw the new primary oblique image over existing images. Ms. Wu, to pick up a little bit on your colloquy with Judge Stark, I seem to get the sense that what you're saying is that can be considered in the primary oblique image definition, you're basically saying can be considered means you should look at it as being on top of. Is that what you're saying? Yes. Is that what you're saying can be considered means in that context? Yes. As opposed to a permissive approach when we're talking about master image. Yes, that's exactly right. And did your expert talk about that, that can be considered means it just sort of appears to be in front of, but since we're in a two dimensional space, we all know it's not really in front of, or is that just what you would have us figure out for ourselves, I guess, based on the intrinsic evidence? So I don't recall any expert testimony, but there was discussion on this language in the oral hearing before the board. And so I'm happy to point the court to that. If you have it at hand, but if not, I'll find it out. Let me ask you, oh, I'm sorry, were you finished? Your question? Yes. Excuse me. Let me ask you, I've never, I was often told never ask a witness why, but you're not really a witness, so I'll ask you why. Why do they have in here this, if definitions are so important, why put in there this disclaimer at the top of the definitional section that appears at column six? Everybody's arguing this is what it means, but yet, sort of picking up maybe with what Judge Deitch said earlier, disregard it. Why is that in there, and what's the purpose of it? I think what the patent owner was trying to do was preserve non-limiting instances where it is relevant. And I'd like to point the court to other definitions that expressly recite that those definitions are not limited in that specific way in the actual definition. So for example, if we look at the definition for the term transition, starting at line 38, the very last sentence of the definition for transition says this can include and is not limited to fading images and directly replacing images. In the very next definition, transition event, it also says in the last line, the transition event can include, but is not limited to the act of panning or a user action such as a mouse click. And so there are other definitions where the definition may not be limiting, but that is not the case with the primary oblique image because that definition doesn't have that explicit non-limiting language. Haven't we said in other cases that some boilerplate statements aren't to be given effect? Yes, and the court has said exactly that. The cases that are cited in the briefing in this case are wireless agents, interdigital and sandbox logistics. Is it your view then that maybe because it's boilerplate or for other reasons that we should entirely disregard the statement that says, hey, this isn't limiting or do we need to consider it as part of the intrinsic evidence? I would say the court shouldn't completely disregard it, but given the weight of the definition, the consistent disclosures and the specification with the figures, the expert testimony, all of that evidence shows that the definition here has a narrower definition or construction, which includes the in front of requirement. Does in front of those words in that order, does that appear anywhere other than in the terminology section? So the word in front of doesn't appear anywhere else, but again, we have other similar words like roll back, over, we have the testimony of the experts who both agree that the images in figures 3A and 3B show a primary oblique image over the other oblique image. And so all that evidence is consistent to support the definition, which includes the in front of requirement. I just noticed here that in the primary oblique definition, in front of is in quotation marks. Now, maybe I'm missing that, but I didn't see quotation marks anywhere else. Why are quotation marks there? Is there some significance to that? Again, I think it goes back to the fact that we're trying to portray images in two dimensional space. And so again, it just appears in front of the others. I think an analogy is when you have like multiple application windows open on your computer screen, you have the active application window that appears in front of the other images, even on the two dimensional space of the screen. Because the screen is not three dimensional space, so you're not physically putting it on top of like you would in real life. So in quotes mean, in other words, kind of in front of or kind of on top of, is what you're suggesting? Yeah, it appears or it's perceived or like along those lines. If the court has no further questions, Victometry respectfully asks the court to confirm the court's decision.  Ms. Dickens. Yes, Your Honor. So if we could focus on your question about is there any testimony from Victometry's expert, Dr. Bajaj, about the specific meaning in the context of the field completely devolves from this patent? The answer is no. We look at Appendix 2101, what he talks about is that primary oblique image includes a image that can be considered in front of others. He doesn't even say limited. He says includes consistent with our view of the specification, showing that this definition is broadening the ordinary meaning of primary. Okay, let's assume that the definition is not limiting. What is it in the specification or the claims that tell us that it means something else other than the rollback example that you gave us earlier? So besides the rollback and the two sentences, there's nothing in the specification. Again, we're trying to prove a negative. There's nothing in the specification, no indicia of saying the present invention is X. The present invention includes. It's particularly important that we consider. Well, is there any example in there that tells us that it's something that would be inconsistent with the definition? Well, the example I would have to, I think our best example is the rollback example, Your Honor, but we contrast that with the other example even counsel showed you, which is right immediately above it. It talks about drawing an image over. So the first example is drawing an image over. The second image is rolling it back. This is in column 11, Your Honor. We go down to approximately line 35. We're given three examples of a transition. One is writing over, one is rolling back so that the new primary oblique image. Why isn't primary over harmful to your argument? I'm showing breadth, Your Honor. I mean, I think there's breadth. The description as a whole shows us many embodiments where the primary oblique image may be over, may be under. The third one is transitioning, fading in and out is neither. It's showing breadth. Where is it showing under? Where is it showing a primary oblique image under? That would be our view of the rollback transition because the new primary oblique image is revealed as you roll the other image to the side. So it was under, it can be considered under as you're rolling the other image to the side. So we're saying- That's the moment at which the former primary is no longer primary. However, the patent is telling us right here that the old primary is still called primary and the new primary is called primary. But even if you think there's only one embodiment, I think this court has said repeatedly that absent something like president invention is particularly important or disparaging other ways of doing it, having one embodiment is not a reason to limit. And none of those attributes appear in the specification if you read it without paying mind to the description of the- There was reference to our cases about boilerplate. Do you have anything to say about that? I do, Your Honor. So here, what we have in our case is in great close proximity, is not a generalized boilerplate statement. It's a particularized statement saying terminology is not for limiting purposes and it's immediately before the description. At the end, there is other, what you might call boilerplate statements in column 12. So I think when we have to weigh the general versus the particular, particular here tells us that one sentence away when we get to terminology, it should not be considered limiting. And what do you do with the other definitions that themselves say we're not limiting, sort of an extra we're not limiting, which is missing in the primary oblique image? I would characterize that as some additional belt and suspenders in addition to the well-stated and specific non-limiting terminology section above. Okay, thank you. Thank you, counsel. The case is submitted.